Odermatt v. New York City Department of Education

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 1st day of June two thousand seventeen.

Present:     PIERRE N. LEVAL,
             ROSEMARY S. POOLER,
             PETER W. HALL,
                     *Circuit Judges*.

———————————————————————————

EMILY MARIE ODERMATT,

             *Plaintiff-Appellant*,

             v.                                          16-2237-cv

NEW YORK CITY DEPARTMENT OF EDUCATION,
AMY WAY, IZAAK ORLANSKY,

             *Defendants-Appellees*.[1]

———————————————————————————

Appearing for Appellant:     Emily Marie Odermatt, Long Island City, NY.

Appearing for Appellee:     Megan E.K. Montcalm, Assistant Corporation Counsel (Scott Shorr, Assistant Corporation Counsel, *on the brief*), for Zachary W. Carter, Corporation Counsel of the City of New York, New York, NY.

---

[1] The Clerk of the Court is directed to amend the caption as above.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Townes, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Emily Marie Odermatt, proceeding pro se, appeals from a judgment in favor of the New York City Department of Education, Amy Way and Izaak Orlansky (together, the "City Defendants" in her suit under 42 U.S.C. §§ 1983 and 1985(3). We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

We review de novo the dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), accepting all factual allegations as true and drawing all reasonable inferences in plaintiff's favor. *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015). The complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court must accept as true all the factual allegations in the complaint, that requirement is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Odermatt was accepted into the New York City Teaching Fellows ("NYCTF") program, in which, after a period of pre-service training, she could work as a teacher while simultaneously pursuing a subsidized Master's degree. As part of the program, she joined several Facebook groups created by NYCTF. NYCTF placed Odermatt with Relay Graduate School of Education ("Relay") for her Master's program. However, Odermatt was not happy with this placement and posted several disparaging comments about Relay in one of the Facebook groups. She was subsequently contacted by a NYCTF program administrator who warned her that her comments might jeopardize her good standing with Relay, which could in turn jeopardize her good standing

with NYCTF. Odermatt sent an email to NYCTF complaining about alleged attempts to silence her speech and generally about her placement with Relay. Two days later, Odermatt received an email from the same email address informing her that she was being removed from the program because she was no longer in good standing with Relay. Shortly thereafter, Odermatt was removed from the NYCTF Facebook groups. Odermatt sued two New York City Department of Education ("DOE") employees, asserting claims for viewpoint discrimination, First Amendment retaliation, violations of her due process and equal protection rights, and conspiracy to violate her rights.

## I. First Amendment Claims

### A. Viewpoint Discrimination

Odermatt argues that the NYCTF Facebook groups were limited public fora and that, by excluding her when other non-teaching fellows (i.e., school hiring officials) were allowed access, Appellees violated her First Amendment rights. In a limited public forum, the "government opens a nonpublic forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects." *Travis v. Owego-Apalachin Sch. Dist.*, 927 F.2d 688, 692 (2d Cir. 1991). Assuming Odermatt is correct that the Facebook groups were limited public fora, she failed to allege that, after she was removed from the NYCTF program, she was similarly situated to the certain kinds of speakers she alleged still had access. *See id.* Accordingly, the district court properly dismissed her viewpoint discrimination claim.

### B. Retaliation

Odermatt argues primarily that the district court erred in treating her as a public employee for purposes of analyzing her First Amendment retaliation claim, and she alternatively argues that her speech was protected even under the public-employee line of cases. To state a claim for

First Amendment retaliation, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 106–07 (2d Cir. 2001). Generally, almost any speech is protected under the First Amendment. *Lynch v. Ackley*, 811 F.3d 569, 578 n.8 (2d Cir. 2016). However, when the speaker is a public employee, she must also allege that her speech was "on matters of public interest," *id.* at 576 (quoting *Pickering v. Bd. of Ed.*, 391 U.S. 563, 568 (1968)), and made as member of the public, rather than as an employee. *Id.* at 577-78 (citing *Garcetti v. Ceballos*, 547 U.S. 510 (2006)).

As an initial matter, Appellees argue that regardless of whether Odermatt is properly considered a citizen-speaker, a student, or a public employee, she failed to establish the third element of her claim because she did not allege that the Appellees were aware of her Facebook posts or her email to NYCTF. However, the email, which was marked "urgent," was sent to the same email address that one of the Appellees used, less than two days later, to notify Odermatt that she had been removed from the NYCTF program. Thus it is at least plausible that Way was aware of the email and that her removing Odermatt was motivated by the email. *See, e.g.*, *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001) (observing that a plaintiff can establish causation indirectly through temporal proximity). Accordingly, whether Odermatt's First Amendment retaliation claims survive turns on whether she should be treated as a public employee.

The documents attached to Odermatt's complaint offer conflicting accounts of her relationship with DOE during pre-service training. However, we conclude that, in the circumstances of this case, the framework used to analyze public-employee retaliation claims

best fits because the concern for the efficient operation of a government agency that underlies the more limited speech protection in that framework applies with equal force to the NYCTF program. *See Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (discussing how, in the context of a government employee, the scope of speech that is protected by the First Amendment is more limited because "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions . . . for the efficient provision of public services"). Here, NYCTF's mission is "to recruit and prepare high quality, dedicated individuals to become teachers who can raise student achievement in the New York City classrooms that need them most." Accordingly, even if Odermatt was not technically an employee of DOE during her pre-service training, we conclude that Appellees' relationship with Odermatt was focused on their ability to recruit and train employees "for the efficient provision of public services." *See Garcetti*, 547 U.S. at 418.

Nonetheless, Odermatt argues that, even if treated as a public employee, the contents of her email were sufficiently of public concern. Specifically, she argues that her concerns about Relay's Master's program involved her ability to properly prepare to be a teacher and to dedicate a portion of her time to volunteering, which in turn affected public interests. However, speech, like Odermatt's, that, "although touching on a topic of general importance, primarily concerns an issue that is personal in nature and generally related to [the speaker's] own situation . . . does not address matters of public concern." *See Jackler v. Byrne*, 658 F.3d 225, 236 (2d Cir. 2011) (internal quotation marks omitted). Accordingly, her speech was addressed to her private concerns in the context of her employment relationship, rather than to public concerns. It was addressed to concerns she had to her capacity as an employee in the program. *See Garcetti*, 547 U.S. at 421-424; *Pickering*, 391 U.S. at 568. While her speech was undoubtedly protected

against some kinds of governmental interference, she was not protected from retaliation in the employment context on account of such speech.

## II. Remaining Claims

Odermatt's remaining challenges are meritless. Her equal protection claim, which was premised on the same allegations as her viewpoint-discrimination claim, fails for the same reasons the viewpoint-discrimination claim fails. *See African Trade & Info Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 362–64 (2d Cir. 2002). Her due process claim fails because where, as here, a claim is based on an allegedly random, unauthorized act, "the Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful postdeprivation remedy." *See Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996). And Odermatt could have challenged her removal in an Article 78 proceeding. *See id.* at 881 ("We have held on numerous occasions that an Article 78 proceeding is a perfectly adequate postdeprivation remedy in the present situation."); *see also In re Loren v. N.Y.C. Dep't of Educ.*, 126 A.D.3d 419, 419 (1st Dep't 2015) (affirming dismissal of Article 78 petition challenging teaching fellows' removal from NYCTF program during pre-service training). Finally, in addition to being wholly conclusory, Odermatt's § 1953(3) claim fails because there was no underlying violation.

We have considered the remainder of Odermatt's arguments and find them to be without merit. Accordingly, the order of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk